# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

ESERVICES, LLC,

      Plaintiff,

v.                                   Civil Action No. 3:09cv671

ENERGY PURCHASING, INC., et al.,

      Defendants.

## REPORT AND RECOMMENDATION

This matter comes before the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for a Report and Recommendation on the pending motions to dismiss for lack of personal jurisdiction and motions to dismiss for improper venue, or in the alternative, to transfer venue, by Defendants Magnum Drilling of Ohio, Inc. ("Magnum") and Michael P. Buchart ("Buchart") (collectively, "Defendants").[1] (Docket Nos. 48, 49, 52.) Plaintiff eServices, LLC ("eServices") has responded (Docket Nos. 72, 73), and Defendants have replied (Docket Nos. 74, 75). The Court heard oral argument, and allowed the parties to file supplemental memoranda. (Docket Nos. 79, 80, 81, 82, 83, 84.) The matter is ripe for disposition.

For the following reasons, the undersigned RECOMMENDS that the Court GRANT Defendants' motions to dismiss for lack of personal jurisdiction. (Docket Nos. 48, 52.) The undersigned RECOMMENDS that the Court DENY AS MOOT Defendants' motions to dismiss for improper venue. (Docket Nos. 49, 52.)

---

[1] Defendant Energy Purchasing, Inc. ("EPI") has not moved the Court to dismiss the action pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Accordingly, the Court's reference to "Defendants" does not include EPI.

# I. Procedural Background

## A. eServices Filed a Complaint Against EPI

On October 21, 2009, eServices filed its Complaint in this Court against EPI. (Docket No. 1.) eServices alleged that it entered into Natural Gas Purchase Sales Confirmations ("Confirmations") with EPI and that EPI failed to meet its obligations under the Confirmations. (Compl. ¶¶ 7, 20.) The Confirmations at issue are Confirmation Nos. 9054 and 9047, which will be explained in further detail below.

eServices asserted five claims against EPI:

**Count I:** breach of contract as to Confirmation No. 9054;

**Count II:** anticipatory repudiation/anticipatory breach as to Confirmation No. 9054;

**Count III:** anticipatory repudiation/anticipatory breach as to Confirmation No. 9047;

**Count IV:** seeking declaratory judgment establishing EPI's liability to provide natural gas as to Confirmation Nos. 9054 and 9047; and,

**Count V:** seeking specific performance of Confirmation Nos. 9054 and 9047. (Compl. ¶¶ 22-57.)

## B. eServices Filed an Amended Complaint and Added New Defendants

By Order entered April 30, 2010, the Court granted eServices leave to amend its Complaint. (Docket No. 32.) On May 3, 2010, eServices filed its Amended Complaint. (Docket No. 33.) The Amended Complaint alleged four claims, adding Defendants Buchart and Magnum, as well as EXXO Resources Company ("Exxo") and Basin Energy Company ("Basin"). eServices alleges "EPI was formed by Buchart for the purpose of contracting to sell natural gas owned or produced by Buchart and others, including . . . Magnum," and that "EPI is a

mere shell, a sham corporation with no assets, and is the alter ego of Buchart." (Am. Compl. ¶ 2.)

The parties informed the Court that they were seeking resolution as to some claims, and, indeed, they subsequently notified the Court that eServices had settled all or part of its claims against Defendants Basin, EXXO, and Magnum. All claims against Defendant Basin have been dismissed. (Docket No. 77.) All claims against Defendant EXXO have been dismissed. (Docket No. 85.) The claims against Magnum pertaining to Confirmation No. 9054 (Counts I, III and IV) also have been dismissed.[2] (Docket No. 85.)

The remainder of the Amended Complaint stands before the Court as follows:

**Count I:** anticipatory breach/anticipatory repudiation/breach of contract as to Confirmation No. 9054 against Defendants EPI and Buchart. (Am. Compl. ¶¶ 40-51.)

**Count II:** anticipatory repudiation/anticipatory breach/breach of contract as to Confirmation No. 9047 against Defendants EPI, Magnum, and Buchart. (Am. Compl. ¶¶ 52-61.)

**Count III:** seeking declaratory judgment establishing that Defendants EPI, Magnum, and Buchart are obligated to provide natural gas to eServices. (Am. Compl. ¶¶ 62-67.)

**Count IV:** seeking performance of the Confirmations against Defendants EPI, Magnum, and Buchart. (Am. Compl. ¶¶ 68-72.)

## II. Factual Background

"eServices is a midstream logistics company that manages physical assets and provides asset optimization, logistics, gas supply, and risk management services to local distribution gas

---

[2] The undersigned Magistrate Judge therefore RECOMMENDS that the motions to dismiss for lack of personal jurisdiction and venue as to Defendants Basin and EXXO be DENIED AS MOOT. (Docket Nos. 48, 49, 63, 65.)

utilities, large industrials, electric generators, and producers in the Mid-Atlantic area." (Am. Compl. ¶ 1.) (Docket No. 33.) This action arises out of eServices's alleged contractual relationship with Defendants to purchase natural gas from two Kentucky wells.

## A.      Confirmation No. 9047

eServices alleges that, on or about May 23, 2008, it reached an oral agreement with EPI in which "EPI agreed to sell and eServices agreed to purchase 1,100 Dekatherms ('Dth') per day of natural gas at Meter CNR02 . . . for the period from November 1, 2009 through October 31, 2011." (Am. Compl. ¶ 17.) "eServices agreed to pay $2.50 per Dth less than the . . . index price." (Am. Compl. ¶ 17.) eServices alleges that "the 1,100 Dth per day comprised over 90% of the natural gas production available to EPI from the various parties and joint venturers it represented, including, but not limited to, . . .Buchart . . . and Magnum." (Am. Compl. ¶ 18.) eServices and EPI memorialized this agreement via Confirmation No. 9047. (Am. Compl. ¶ 19.)

eServices alleges "EPI was an administratively dissolved corporation at the time Buchart executed Confirmation No 9047 on behalf of EPI." (Am. Compl. ¶ 20.) Accordingly, eServices alleges that Buchart bears personal liability for the obligations of EPI because "[a]t the time it entered into the contracts with eServices described herein, EPI had been administratively dissolved by the Kentucky Secretary of State. . . . [and that] Buchart carried on business other than that necessary to wind-up EPI's affairs, including but not limited to contracting with eServices." (Am. Compl. ¶ 13.)

eServices further alleges that "EPI contracted with eServices to sell the 1,100 Dths per day of natural gas at meter CNR02 . . . on behalf of and as agent for the joint venture comprised of EPI, . . . Magnum, Buchart, and possibly others, or as an agent of . . . Magnum, Buchart and

4

possibly others." (Am. Compl. ¶ 21.) eServices alleges that EPI failed to disclose that it acted on behalf of the joint venture or as agent for the other Defendants. (Am. Compl. ¶ 22.)

## B.    Confirmation No. 9054

eServices alleges that on or about July 15, 2008, eServices and EPI executed Confirmation No. 9054, in which EPI agreed to supply eServices with "65 Dth of natural gas from meter 835043[3] on a daily basis beginning on November 1, 2008 and ending on October 31, 2010." (Am. Compl. ¶ 23.) eServices agreed to pay $2.50 per Dth less than the index price. (Am. Compl. ¶ 23.)

eServices alleges that EPI had been administratively dissolved at the time Buchart executed Confirmation No. 9054 on behalf of EPI. (Am. Compl. ¶ 24.) eServices further alleges that "EPI contracted with eServices to sell the 65 Dth per day of natural gas at meter 835043 on behalf of and as agent for the joint venture comprised of EPI, . . . Magnum and Buchart," but EPI failed to disclose this joint venture to eServices.[4] (Am. Compl. ¶¶ 26-27.)

## C.    Performance of Confirmation Nos. 9047 and 9054

Regarding performance on the two contracts, eServices alleges that, "[i]n reliance upon the supply of natural gas anticipated under Confirmation Nos. 9054 and 9047, eServices entered into firm sales agreements with third parties." (Am. Compl. ¶ 29.) From November 2008 through August 2009, EPI performed under Confirmation No. 9054. (Am. Compl. ¶ 30.)

---

[3] eServices alleges that "[c]onfirmation 9054 indicates meter '837043,'" but that the parties intended the Confirmation to state meter "835043." (Am. Compl. ¶ 25.)

[4] As noted above, the claim against Magnum as to Confirmation 9054 has been dismissed. (Docket No. 85.)

5

On August 25, 2009, however, EPI communicated to Seth Dickey at eServices EPI's demand that eServices not nominate any natural gas for sale to eServices pursuant to Confirmation No. 9054 for the month of September 2009. (Am. Compl. ¶ 31.) By letter dated September 1, 2009, eServices reminded EPI of its obligation to supply eServices with natural gas. (Am. Compl. ¶ 32 & Ex. 4.) By letter dated September 9, 2009, EPI replied "that it did not agree with eServices' position regarding its obligations under Confirmation Nos. 9054 and 9047." (Am. Compl. ¶ 33 & Ex. 5.)

On September 25, 2009, eServices informed EPI that its failure to supply eServices with natural gas during September 2009 constituted a breach of its obligations under Confirmation No. 9054. (Am. Compl. ¶ 34 & Ex. 6.) eServices further informed EPI that, because of EPI's performance with respect to Confirmation No. 9054, eServices now required adequate assurances that EPI would continue to deliver natural gas to eServices as required pursuant to Confirmation No. 9047. (Am. Compl. ¶ 37 & Ex. 6.) EPI failed to provide any assurance as requested with respect to Confirmation No. 9047. (Am. Compl. ¶ 38.)

eServices alleges damages resulting from EPI's actions. Specifically, eServices alleges that "[a]s a result of EPI's failure to meet its supply obligations under Confirmation No. 9054 . . . eServices has suffered damages at least in the amount of $162.50 per day during each of the subsequent months." (Am. Compl. ¶ 35.) With respect to Confirmation No. 9047, eServices alleges that it has suffered "damages at least in the amount of $2,750.00 per day beginning on November 1, 2009." (Am. Compl. ¶ 39.) eServices alleges that it was forced to obtain the shortfall of natural gas from other suppliers in order to meet its obligations under third-party contracts, thereby incurring additional damages. (Am. Compl. ¶¶ 36, 39.)

### III. Motions to Dismiss

Defendants move the Court to dismiss eServices's Amended Complaint against them pursuant to Federal Rule of Civil Procedure 12(b)(2).[5]  Each Defendant contends that it lacks any direct contacts with Virginia sufficient to establish personal jurisdiction.  (*See* Magnum & Basin Mem. Supp. Mot. Dismiss Lack Personal Jurisdiction ("Magnum Mem.") 1-2; Mem. Supp. Buchart's Mot. Dismiss ("Buchart Mem.") 1-2.)  (Docket Nos. 51, 53.)  Additionally, Defendants contend that the Court's jurisdiction cannot rest on the allegation that a joint venture or agency relationship exists between Defendants and EPI because eServices has failed to plead facts sufficient to establish any joint venture or agency relationship relating to the wells at issue in the complaint.  (Magnum Mem. 1-2.)  Finally, Buchart contends that even if eServices could establish sufficient minimum contacts, any contact between Buchart and this forum resulted from his role as president of EPI, and does not form the predicate for personal jurisdiction over Buchart in his individual capacity.  (Buchart Mem. 8-9.)

Defendants next assert that venue does not lie in this District, and they move the Court to dismiss pursuant to Rule 12(b)(3),[6] or, in the alternative, to transfer venue to another jurisdiction.  (Buchart Mot. Dismiss.)  (Docket No. 52.)  Defendants contend that eServices cannot show that a substantial part of the events or omissions giving rise to the Amended Complaint occurred in the Eastern District of Virginia because the events or omissions occurred, if at all, in Kentucky and between only eServices and EPI.  Defendants assert that proper venue lies in the Eastern District

---

[5]  Rule 12(b)(2) permits a party to file a motion asserting the defense of lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).

[6]  Rule 12(b)(3) permits a party to file a motion asserting as a defense lack of venue.  Fed. R. Civ. P. 12(b)(3).

of Kentucky. After a hearing on the matter, the Court allowed the parties to file supplemental memoranda.[7]

## IV. Analysis

eServices contends "that it is EPI's contacts [with Virginia] that subject these Defendants to personal jurisdiction in this Court." (eServices Br. Opp'n EXXO, Basin, & Magnum's Mots. Dismiss ("Pl.'s Opp'n"), at 1-2.) (Docket No. 73.) However, "[a]s a general rule, each defendant's contacts with a forum state must be assessed individually." *Noble Sec., Inc. v. MIZ Eng'g, Ltd.*, 611 F. Supp. 2d 513, 527 (E.D. Va. 2009) (*citing Calder v. Jones*, 465 U.S. 783, 790 (1984)). Accordingly, the Court considers first whether Defendants' relationship with EPI suffices to establish personal jurisdiction, as eServices contends, and second, whether each Defendant's contacts with the forum suffice to establish personal jurisdiction.

---

[7] The Court anticipated only oral arguments during the hearing. However, Defendant Magnum requested permission to put on evidence through the oral testimony of James Large, Magnum's Vice President, during the hearing. eServices lodged no objection. Absent objection, the Court allowed the presentation of evidence as well as oral argument.

When a defendant moves for dismissal due to lack of personal jurisdiction, a separate evidentiary hearing on the matter is needed only if the existence of jurisdiction turns on disputed factual questions. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989). Here, no relevant factual disputes exist as to jurisdiction; any disputes pertain instead to the application of Kentucky and Virginia law. The evidence adduced during the hearing itself offered little to further this Court's decision making process, and did not establish a disputed factual question.

Thus, for the purposes of this Report and Recommendation, the Court addresses the question of personal jurisdiction "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint," *id.*, including the supplemental memoranda it allowed the parties to file. Because the Court finds that eServices fails to make a prima facie case as to personal jurisdiction, the Court also finds that it would fail to show grounds for personal jurisdiction by a preponderance of the evidence. *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

## A. eServices Fails to Plead Facts Sufficient to Establish the Existence of a Joint Venture or Agency Relationship Among Defendants and EPI as a Basis for Personal Jurisdiction

### 1. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (*citing* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (hereinafter "*Twombly*") (*quoting Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a

9

claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (*citing Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (*citing Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)).

### 2. eServices Fails to Allege Facts Sufficient to Establish a Joint Venture Among Defendants and EPI

Under Kentucky law,[8] a joint venture contains four elements:

> (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control.

*Huff v. Rosenberg*, 496 S.W.2d 352, 355 (Ky. Ct. App. 1973). "A joint venture requires more than an agreement of parties to act in concert to achieve a stated objective. There must be some sharing of responsibility and control of the venture. An essential feature of joint venture is the element of joint control." *Young Women's Christian Ass'n v. Family of Owensboro-Daviess County, Inc.*, 488 S.W.2d 358, 361 (Ky. Ct. App. 1972) (internal citations omitted).

eServices alleges "EPI was formed by Buchart for the purpose of contracting to sell natural gas owned or produced by Buchart and others, including . . . Magnum," and that "EPI is a

---

[8] The parties do not dispute that Kentucky law governs eServices's allegation of a joint venture among Defendants, or of an agency relationship, which is discussed below.

10

mere shell, a sham corporation with no assets, and is the alter ego of Buchart." (Am. Compl.

¶ 2.) Specifically, eServices alleges that

> EPI, Buchart, . . . and Magnum are joint venturers with respect to the operation, production, marketing and sale of natural gas produced by the Exxo 33 and Exxo 34 wells, each having agreed with the others, expressly or impliedly, to operate the wells for a profit, and each maintaining a voice in the direction and control of their combined enterprise. On information and belief, EPI, on behalf of the joint venture, contracts to sell the natural gas produced by Exxo 33 and Exxo 34.

> . . . Magnum, Buchart and others collectively own other natural gas producing wells and are joint venturers with EPI with respect to those wells, each having agreed with the others, expressly or impliedly, to operate the wells for a profit, and each maintaining a voice in the direction and control of their combined enterprise. . . . EPI, on behalf of the joint venture, contracts to sell the natural gas produced by these wells.

(Am. Compl. ¶¶ 14-15.) eServices further alleges that EPI contracted to sell natural gas on

behalf of the joint venture without disclosing to eServices that EPI was acting in such a capacity.

(Am. Compl. ¶¶ 21-22, 26-27.)

The Court finds eServices's allegations with respect to the joint venture lacking.

eServices has placed before the Court an Amended Complaint containing only "labels and

conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S.

at 555 (citations omitted). eServices's Amended Complaint lacks facts sufficient "to raise a right

to relief above the speculative level." *Id.* (citation omitted). Accordingly, eServices has not

stated a claim with respect to the alleged joint venture that is "plausible on its face," *id.* at 570,

rather than merely "conceivable." *Id.*

No other evidence before the Court satisfies eServices's prima facie case of a joint

venture. Magnum, through an affidavit, testified about various partnerships with a non-operating

working interest in the various wells at issue. (Def. Magnum Drilling's Post-Hr'g Submission

11

Ex. 1, Supp'l Decl. of Magnum Drilling of Ohio, Inc.) Both Magnum and Buchart own an interest in these partnerships. eServices argues that even if the Defendants characterize the interest as a "non-operating working interest" and have delegated the power to produce and market the gas to others, the Defendants, through their ownership interest, still have the ultimate control. In opposition, the Defendants contend that eServices has failed to meet the fourth element of establishing a joint venture under Kentucky law, which is: "an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Huff*, 496 S.W.2d at 355. The Defendants assert that they are merely passive investors in various wells (including those at issue), through various drilling partnerships, with no authority to control the production or sale of gas.

The Court finds that the mere showing that the Defendants own an interest in drilling partnerships which in turn own a non-operating working interest in the wells at issue, in the absence of any other evidence, does not satisfy a prima facie case of a joint venture. Even viewing this evidence in the light most favorable to eServices, this evidence at most shows that the Defendants are passive investors entitled to a royalty payment based on their interest in the drilling partnerships.

Because the Court finds that eServices has failed to plead facts sufficient to establish a joint venture among Defendants and EPI, the Court cannot exercise personal jurisdiction over Defendants on this basis.

### 3.    eServices Fails to Plead Facts Sufficient to Establish an Agency Relationship Among Defendants and EPI

Under Kentucky law, "'[a]gency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and

12

subject to his control, and consent by the other so to act.'" *CSX Transp., Inc. v. First Nat'l Bank of Grayson*, 14 S.W.3d 563, 566 (Ky. Ct. App. 1999) (*quoting McAlister v. Whitford*, 365 S.W.2d 317, 319 (Ky. 1962)). "The right to control is considered the most critical element in determining the principal's liability for the tortious acts of an agent." *Brooks v. Grams, Inc.*, 289 S.W.3d 208, 212 (Ky. Ct. App. 2008). Courts may consider a number of other factors, however, including: the extent of the control the master exercises over the agent's work; whether the employer or the agent supplies the tools and place of work; the length of time the person is employed; whether or not the work is part of the regular business of the employer; and whether or not the parties believe they are creating an agency relationship. *Id.* (*citing Sam Horne Motor & Implement Co. v. Gregg*, 279 S.W.2d 755, 756-57 (Ky. Ct. App. 1955).

eServices raises the same allegations with respect to the alleged agency relationship as it did with the alleged joint venture. (*See* Am. Compl. ¶¶ 16, 21-22, 26-27.) For the same reasons the evidence before the Court failed to establish a prima facie case for a joint venture, primarily the lack of evidence showing control, the evidence also fails to establish a prima facie case for an agency relationship between the Defendants and EPI.

The Court so finds even considering evidence submitted by eServices in its supplemental memorandum. eServices points to an Agency Request form in which Buchart signs as a Company Officer of Magnum, purportedly representing himself as an agent of Magnum. (eServices, LLC's Reply to Magnum Drilling of Ohio, Inc.'s Post Hr'g Submission Ex 1, Supp'l Decl. of Harry Newton Ex C.) This form was purportedly signed by Buchart on September 26, 2008 and related to a meter other than the one at bar, meter number 834333. This document does

not persuade the Court as to the existence of an agency relationship between EPI and Magnum in relation to meter CNR02, the only meter at issue as to Magnum's liability.

Accordingly, the Court finds that eServices has failed to plead facts sufficient to establish an agency relationship among Defendants and EPI. Therefore, the Court cannot exercise personal jurisdiction over Defendants on this ground.

### B. Basic Principles of Personal Jurisdiction

#### 1. Plaintiff Bears the Burden to Prove Grounds for Jurisdiction by a Preponderance of the Evidence

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc.*, 334 F.3d at 396. When a district court considers a challenge to personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a prima facie showing of personal jurisdiction, rather than show jurisdiction by a preponderance of the evidence. *Id.*; *Combs*, 886 F.2d at 676. "The court, in deciding whether a plaintiff has met this burden, must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Brooks v. Motsenbocker Advanced Devs., Inc.*, 242 F. App'x 889, 890 (4th Cir. 2007) (*citing Combs*, 886 F.2d at 676).

"If a plaintiff makes the requisite showing, the defendant then bears the burden of presenting a 'compelling case,' that, for other reasons, the exercise of jurisdiction would be so unfair as to violate due process." *Reynolds Foil, Inc. v. Pai*, No. 3:09cv657, 2010 WL 1225620, at *1 (E.D. Va. Mar. 25, 2010) (*quoting Burger King v. Rudzewicz*, 471 U.S. 462, 477-78

14

(1985)). "For purposes of the motion to dismiss, the reviewing court may presume that any uncontradicted evidence submitted by either party is true." *Id.*

### 2. In Order to Exercise Personal Jurisdiction, the Court Must Find that Defendants Maintain Sufficient Contacts with the Forum so as Not to Offend Traditional Notions of Fair Play and Substantial Justice

Federal courts exercise personal jurisdiction in the manner provided by state law. *New Wellington Fin. Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290, 294 (4th Cir. 2005). Therefore, a district court must first decide whether Virginia state law permits the court to exercise personal jurisdiction over the defendant, and second, whether the exercise of such jurisdiction comports with the due process requirements of the Fourteenth Amendment. *Id.*; *Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001); *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 622 (4th Cir. 1997).

In relevant part, Virginia's long arm statute permits a court to exercise personal jurisdiction over a non-resident defendant "as to a cause of action arising from the person's . . . [t]ransacting any business in this Commonwealth . . . [or c]ontracting to supply services or things in this Commonwealth." Va. Code § 8.01-328.1. "Because Virginia's long-arm statute extends personal jurisdiction to the extent permitted by the Due Process Clause, 'the statutory inquiry necessarily merges with the constitutional inquiry, and the two inquiries essentially become one.'" *Young v. New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (*quoting Stover v. O'Connell Assocs., Inc.*, 84 F.3d 132, 135-36 (4th Cir. 1996)) (internal citation omitted). Therefore, the inquiry becomes whether the defendant maintains sufficient minimum contacts with the forum state so as not to offend "'traditional notions of fair play and substantial justice.'"

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

### 3.    Specific Jurisdiction and General Jurisdiction

"The standard for determining the existence of personal jurisdiction over a nonresident defendant varies, depending on whether the defendant's contacts with the forum state also provide the basis for the suit." *Carefirst of Md., Inc.*, 334 F.3d at 397. "If the defendant's contacts with the State are also the basis for the suit, those contacts may establish specific jurisdiction. . . . [I]f the defendant's contacts with the State are not also the basis for suit, then jurisdiction over the defendant must arise from the defendant's general, more persistent, but unrelated contacts with the State." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002) (*citing Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 & nn.8-9 (1984)).

### a.    The Court Undertakes a Three-Part Test to Determine Whether It May Exercise Specific Jurisdiction

The United States Court of Appeals for the Fourth Circuit has adopted a three-part test to determine whether specific jurisdiction exists. *Reynolds Foil, Inc.*, 2010 WL 1225620, at *2. The Court must consider: "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc.*, 293 F.3d at 712 (alteration in original) (internal citations omitted).

With respect to the first factor, "no clear formula [exists] for determining what constitutes 'purposeful availment.'" *Reynolds Foil, Inc.*, 2010 WL 1225620, at *2. The Court may

consider, however, whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; the nature, quality, and extent of the parties' communications about the business transactions; and, whether the performance of contractual duties was to occur within the forum. *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009) (internal citations omitted). "If, and only if . . . the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the Court] move on to a consideration of prongs two and three." *Id.*

"The second prong of the test for specific jurisdiction . . . requires that the defendant's contacts with the forum state form the basis of the suit." *Id.* at 278-79 (*citing Burger King*, 471 U.S. at 472; *Helicopteros Nacionales de Columbia, S.A.*, 466 U.S. at 414). The third prong of the specific jurisdiction test "permits a court to consider additional factors to ensure the appropriateness of the forum once it has determined that a defendant has purposefully availed itself of the privilege of doing business there." *Id.* at 279. Specifically, the Court may consider:

> (1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies.

*Id.* (*citing Burger King*, 471 U.S. at 477).

17

### b. General Jurisdiction Requires that a Defendant Maintain Continuous and Systematic Contacts with the Forum

To establish general jurisdiction, a plaintiff must meet "a more demanding standard than is necessary for establishing specific jurisdiction." *ALS Scan, Inc.*, 293 F.3d at 712; *ESAB Group, Inc.*, 126 F.3d at 623-24. "[T]he defendant's activities in the state must have been 'continuous and systematic.'" *Carefirst of Md., Inc.*, 334 F.3d at 397 (*quoting ALS Scan, Inc.*, 293 F.3d at 712). "Typically, general jurisdiction requires 'substantial forum related activity on the part of the defendant.'" *Boyd v. Green*, 496 F. Supp. 2d 691, 704 (W.D. Va. 2007) (*quoting* 4 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1067.5 (3d ed. 2002)).

### C. This Court Lacks Personal Jurisdiction Over Defendant Magnum

The Court finds that it lacks personal jurisdiction over Defendant Magnum. Magnum has not purposefully availed itself of the privilege of conducting business in Virginia, and therefore the Court lacks specific jurisdiction. Furthermore, Magnum lacks continuous and systematic contacts with Virginia such that the Court might exercise general jurisdiction.

### 1. The Court Lacks Specific Jurisdiction Over Magnum

The record reflects that Magnum has not availed itself of the privilege of conducting business in this forum such that this Court may exercise specific jurisdiction. Magnum is organized under Ohio law, and "is headquartered in Ashland, Kentucky." (Magnum Mem., Ex. 1, Magnum Aff. ("Magnum Aff."), ¶¶ 2-3.) Magnum's "business is the extraction, production, and sale of petroleum and natural gas." (Magnum Aff. ¶ 3.) Magnum "is not a party to the purported Master Gas Contract, Confirmation No. 9047, or Confirmation No. 9045 [sic] referenced in the Amended Complaint. . . . [and] was never involved in the negotiations of the

terms of those alleged agreements with eServices or any other entity." (Magnum Aff. ¶ 7.)

Magnum does not regularly transact business in or conduct or solicit business in Virginia and has

never traveled to Virginia to solicit business or negotiate contracts, nor has it caused tortious

injury in Virginia. (Magnum Aff. ¶¶ 10-12, 23.) Indeed, Magnum has never owned or leased

any assets or real property in Virginia; never held any bank accounts in Virginia; never

maintained offices, employees, agents, assets, or business operations in Virginia; never

maintained a Virginia mailing address, telephone number, or facsimile number; never drilled any

petroleum or natural gas wells in Virginia; does not obtain parts or supplies from Virginia; and

never entered into an agreement with eServices for the sale of natural gas. (Magnum Aff. ¶¶ 13-

17, 22.)

Magnum's sole contact with Virginia results from a previous agreement with Consol

Energy to haul water from Virginia to Kentucky. (Magnum Aff. ¶ 18.) The parties entered into

the agreement approximately 10 to 12 years ago, and "[t]he last time Magnum Drilling hauled

water for Consol Energy pursuant to the Water Hauling Agreement was five or six years ago."

(Magnum Aff. ¶ 18.) The allegations of the Amended Complaint do not arise from this contact.

(*See generally* Am. Compl.; Magnum Aff. ¶ 19.) Therefore, this Virginia contact cannot form

the basis of the Court's exercise of specific personal jurisdiction. *See ALS Scan, Inc.*, 293 F.3d at

712.

Because the Court finds that Magnum fails the first prong of the specific jurisdiction test,

it need not reach the second and third prongs of the test. *Consulting Eng'rs Corp.*, 561 F.3d at

19

278. The Court finds that it lacks specific jurisdiction over Defendant Magnum.[9] *See ALS Scan, Inc.*, 293 F.3d at 714-15.

## 2.     The Court Lacks General Jurisdiction Over Defendant Magnum

No evidence before the Court suggests that Magnum maintains continuous and systematic contacts with Virginia such that this Court may exercise general jurisdiction. Indeed, eServices does not appear to contend that Magnum falls subject to general jurisdiction. (*See* Pl.'s Opp'n 2, 12.) Accordingly, the Court finds that it lacks general jurisdiction over Magnum.

For the above-stated reasons, this Court RECOMMENDS that Magnum's Motion to Dismiss for Lack of Personal Jurisdiction be GRANTED. (Docket No. 48.)

## D.     The Court Lacks Personal Jurisdiction Over Buchart

eServices contends "that at the time that EPI signed contracts with eServices, EPI did not exist as a corporate entity under Kentucky law. . . . [and that] Buchart is therefore personally liable for the contracts he entered into with eServices on behalf of EPI." (Pl.'s Opp'n to Buchart Mot. Dismiss ("Pl.'s Opp'n Buchart Mem.") 1-2 (Docket No. 72); Am. Compl. ¶ 12.) This allegation constitutes the sole basis to support eServices's claim of personal jurisdiction over Buchart. (*See generally* Pl.'s Opp'n Buchart Mem.) Buchart, however, claims that eServices improperly relies upon Buchart's role as President of EPI to establish personal jurisdiction, and that Buchart bears no personal responsibility for EPI's alleged actions because his contacts with eServices result from his status as president of EPI, and because EPI "was reinstated by the

---

[9] Even were the Court to consider the second and third prongs of the specific jurisdiction test, it would nevertheless find that it lacks specific jurisdiction over Magnum. As the Court noted elsewhere, eServices's claims do not arise out of Magnum's previous contacts with Virginia. (*See* Magnum Aff. ¶ 19.)

Kentucky Secretary of State, which reinstatement related back to the date of the administrative dissolution." (Buchart Mem. 3-11; *see also* EPI Answer ¶ 2 (Docket No. 35).)

The Court of Appeals of Kentucky has stated that, under Kentucky law, "shareholders and officers are personally liable for debts made in the name of the corporation after dissolution." *Forleo v. Am. Prods. of Ky., Inc.*, No. 2005-CA-000196-MR, 2006 WL 2788429, at *1 (Ky. Ct. App. Sept. 29, 2006) (*citing Steele v. Stanley*, 35 S.W. 2d 867, 868 (Ky. Ct. App. 1931)). In *Forleo*, appellants Dean Forleo and John Tandy, sole shareholders, officers, and directors of Quality Management Services, Inc. ("QMS"), continued to operate QMS after the Kentucky Secretary of State had administratively dissolved it. *Id.* Forleo and Tandy purchased materials from appellee, American Products of Kentucky ("APK"), and refused to make payments for the materials. *Id.* APK filed suit, and the trial court held Forleo and Tandy personally liable for the debts incurred by QMS during the period of administrative dissolution. *Id.* After the court found them personally liable, the Kentucky Secretary of State reinstated the corporate existence of QMS retroactive to the date of dissolution. *Id.* Forleo and Tandy filed a motion to alter or amend the judgment. *Id.* On appeal, the court upheld the trial court's ruling, stating that the statute granting retroactive reinstatement "does not affect the personal liability of stockholders or officers for debts incurred in the name of the corporation after dissolution." *Id.* at *2.

After the Court of Appeals of Kentucky issued its decision in *Forleo*, the legislature clarified, by revised statute in 2007, that shareholders generally do not bear personal liability for corporate debts. *See* Ky. Rev. Stat. § 271B.6-220(2) (stating that "a shareholder of a corporation shall not be personally liable for the acts or debts of the corporation except that he may become personally liable by reason of his own acts or conduct"). The amendments to the statute do not

speak to the liability of officers for debts made in the name of the corporation after dissolution, however. In light of the statutory revisions, and because this unpublished opinion has received some criticism, the parties dispute the applicability of this holding to the instant matter. (*See* Buchart Reply Br. Further Supp. Def.'s Mot. Dismiss ("Buchart Reply"), at 2-3 (Docket No. 75); Pl.'s Opp'n Buchart Mem. 7-9.)

Thankfully, this Virginia Court need not resolve that disputed issue of Kentucky law. The Court will presume, without deciding, that Buchart bears personal liability for debts incurred by EPI after administrative dissolution, regardless of its later retroactive reinstatement. Even under this assumption, however, the Court finds that Buchart lacks minimum contacts sufficient to support this Court's exercise of personal jurisdiction.

First, the Court lacks specific jurisdiction over Buchart. The evidence before the Court does not suggest that Buchart purposefully availed himself of the privilege of conducting business in Virginia. Buchart does not maintain any offices or agents in Virginia and does not own any real property in Virginia. (Buchart Reply, Ex. 2, Supp'l Buchart Aff. ("Supp'l Buchart Aff."), ¶¶ 1-2.) Buchart did not reach into the forum state to initiate business; instead, an eServices representative contacted Buchart in Kentucky regarding a business relationship. (Buchart Mem. Ex. 1, Buchart Aff. ("Buchart Aff."), ¶ 2.) Confirmation Nos. 9047 and 9054 "were neither negotiated nor executed" in Virginia. (Buchart Aff. ¶ 3.) Because the natural gas wells are located in Kentucky, and title to the gas passes through a meter located in Kentucky (Buchart Aff. ¶¶ 9-11), the performance of the parties' contractual duties was to occur in Kentucky, rather than Virginia. In addition, "eServices' payments to EPI under the oral agreement were also made in Kentucky." (Buchart Aff. ¶ 13.)

22

At best, the evidence before the Court suggests that Buchart had minimal contacts with Virginia. At some point after reaching an agreement that eServices and EPI would conduct business together, Buchart appeared in Virginia in person and "generally discussed the natural gas industry" with eServices personnel over lunch. (Pl.'s Opp'n Buchart Mem., Ex. A, Newton Decl. ("Newton Decl."), ¶ 3.) Buchart also "contacted eServices on numerous occasions via email, regular mail, telephone, and facsimile transmissions directed to eServices' Glen Allen, Virginia location." (Newton Decl. ¶ 5.) Moreover, construing the allegations of the Amended Complaint in the light most favorable to eServices, the Court presumes that Buchart signed a Master Gas Contract which stated that Virginia law would govern all disputes.[10] As the Court has noted elsewhere, however, the choice of law provision constitutes only one of several factors the Court must consider when determining whether it can exercise personal jurisdiction. *See Consulting Eng'rs Corp.*, 561 F.3d at 281. In addition, Buchart's phone calls, faxes, and letters to eServices's office do not provide a sufficient basis for the Court to exercise personal jurisdiction. *See Superfos Invs. Ltd. v. FirstMiss Fertilizer, Inc.*, 774 F. Supp. 393, 397-98 (E.D. Va. 1991) (noting that "it is generally held that mere phone calls and letters, and arguably fax communications, in furtherance of a transaction are insufficient to form a basis for personal jurisdiction."). Accordingly, the Court finds that these limited contacts with Virginia do not support a finding that Buchart purposefully availed himself of this forum.

Second, the Court lacks general jurisdiction over Buchart. eServices contends that it "is . . . not currently pursuing a theory of general jurisdiction" over Buchart. (Pl.'s Opp'n Buchart

---

[10] Buchart denies that he ever signed a Master Gas Contract on behalf of EPI. (Supp'l Buchart Aff. ¶ 3; *see* Am. Compl., Ex. 1, Master Gas Contract (unexecuted copy of agreement).)

Mem. 3 n.1.) The Court finds, however, that even were eServices to assert that this Court may exercise general jurisdiction over Buchart, this argument must fail. "[G]eneral jurisdiction requires 'substantial forum related activity on the part of the defendant.'" *Boyd*, 496 F. Supp. 2d at 704 (*quoting* 4 Wright & Miller, *Federal Practice & Procedure* § 1067.5). eServices has not alleged any substantial forum-related activity by Buchart. The Court finds that Buchart's contacts with Virginia fail to meet the "more demanding standard" necessary to establish general jurisdiction. *ALS Scan, Inc.*, 293 F.3d at 712.

For the above-stated reasons, the Court RECOMMENDS that Buchart's Motion to Dismiss for Lack of Personal Jurisdiction be GRANTED. (Docket No. 52.)

**E.    Defendants' Motions to Dismiss for Lack of Venue, or in the Alternative to Transfer Venue to the Eastern District of Kentucky, Should Be Denied as Moot**

The Court cannot exercise personal jurisdiction over Defendants. Accordingly, the undersigned Magistrate Judge RECOMMENDS that the Court DENY AS MOOT Defendants' motions to dismiss for lack of venue.

## V.  Conclusion

For the foregoing reasons, the undersigned Magistrate Judge RECOMMENDS that the Court GRANT Defendants' motions to dismiss for lack of personal jurisdiction. (Docket Nos. 48, 52.) The undersigned RECOMMENDS that the Court DENY AS MOOT Defendants' motions to dismiss for improper venue. (Docket Nos. 49, 52.)

The parties are ADVISED that they may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Each objection should be labeled with the corresponding heading from the Report and Recommendation, should be

numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to file specific objections to the Report and Recommendation in a timely manner may result in the entry of an Order dismissing the Complaint. *See* Fed. R. Civ. P. 72(b). It may also preclude further review or appeal from such judgment. *See Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

Let the Clerk send copies of this Report and Recommendation to counsel of record and the Honorable Henry E. Hudson.

It is so ORDERED.

/s/
M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: October 15, 2010